VILLAGE OF WINSIDE, APPELLEE, V. WILLIAM H. BRUNE ET
AL., APPELLEES: UNION LOAN & SAVINGS ASSOCIATION,
APPELLANT.

274 N. W. 212

FILED JUNE 22, 1937. No. 29904.

*Claude S. Wilson, Roy F. Gilkeson, Hymen Rosenberg* and *Leslie W. Ellis,* for appellant.

*H. E. Siman, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and MESSMORE, District Judge.

MESSMORE, District Judge.

This is an appeal from the district court for Wayne county wherein that court sustained a demurrer to the amended answer of appellant.

The petition of appellee village alleges that it purchased

on January 12, 1935, at private tax sale of the county treasurer of Wayne county lots 21, 22, 23 and 24, block 2, original town of Winside; that said property was purchased for all of the taxes delinquent thereon and for which said real estate was subject to sale on said date, together with interest thereon as provided for by law, amounting to the sum of $2,160.64; that said sum represents instalments for paving Nos. 3 to 10, inclusive, in paving district No. 1, in said village, of $70.05 each, with interest as provided by law, and instalments for paving Nos. 1 to 7, inclusive, in paving district No. 2, in said village, of $40.95 each, with interest as provided by law, in the total sum of $1,402.73, and general real estate taxes for the years 1931, 1932 and 1933 which, with interest, amount to the sum of $757.91.

The petition further alleges that the special assessments were properly levied; that William H. Brune, one of the appellees, is the record owner of the title to said real estate; that appellant appears to have some interest in and to the real estate in question; that appellee Ben Saunders, superintendent of banks, in charge of the Citizens State Bank of Winside, has or appears to have some interest in said property by virtue of a mortgage in the sum of $6,000, of record; alleges that whatever right, title or interest appellant or the other named appellees, or any of them, may have or claim to have in said real estate is inferior and subject to the interest of said appellee village arising from said taxes, certificate and tax sale, as aforesaid; prays that an accounting may be had of the amount due it upon its certificate and lien, that the amount due thereunder may be decreed to constitute a first lien against said premises, the lien foreclosed, the equity of redemption and other rights and interests of appellant and other appellees in and to said real estate be barred and foreclosed by this action, that said real estate be sold as upon execution to satisfy the amount found due the village, with interest and attorney's fee. A copy of the county treasurer's certificate of tax sale is attached to and made a part of the petition.

The pertinent parts of appellant's amended answer and cross-petition are that on' or about August 8, 1927, appellees William H. Brune and Emma Brune, husband and wife, executed and delivered to appellant their bond in the sum of $6,000, and to secure the payment of said bond said appellees, on said last-mentioned date, made, executed and delivered their mortgage deed, mortgaging and conveying to appellant lots 23 and 24, block 2, original town of Winside, which mortgage was properly filed of record; further alleges that defendants and appellees defaulted under the terms and conditions of said mortgage; that no part of the mortgage debt has been paid; that foreclosure of said mortgage was had and a decree entered in favor of appellant and against said mortgagors for the sum of $4,175.05, which said sum was declared to be a first lien against said lots 23 and 24; that a nine months' stay was taken, which expired, the court later granting a moratory stay, under which the Brunes are now in possession of said lots; that at some time after the original levy and assessment of said special assessments and prior to the purchase of said tax sale certificate by the village said special assessments were apportioned among said lots by the taxing authorities of said village and so appeared on the records of the county treasurer of said Wayne county, but were thereafter canceled at the request of the taxing authorities of said village.

Said answer and cross-petition further alleges the willingness of appellant to redeem said lots 23 and 24 from all taxes legally assessed against them; that appellee village, its officers and agents and the proper taxing authorities were requested by appellant to apportion the taxes that had been levied and assessed against lots 21, 22, 23 and 24 as one tract or parcel of land, so that appellant might pay the special assessments due and delinquent against said lots 23 and 24, the only lots described in the petition of the village and the tax sale certificate in which this appellant had any right, title or interest, but that said village, its officers and agents and the other proper taxing authorities

refused to do so; that appellant is ready, willing and able to pay all taxes, general and special, legally levied and assessed against said lots 23 and 24, but is unable to pay the same, or to make tender of said taxes into court, for the reason that appellant is unable to ascertain from the records of the county treasurer or from the officers and agents of appellee village the amount of said taxes; asks that said village, its officers and agents and the proper taxing authorities be ordered and directed to separately assess and apportion said taxes, and all of them, between lots 21, 22, 23 and 24 so that appellant may be able to redeem said lots 23 and 24 from said tax sale; prays for the same relief, in substance, as set forth in its amended answer and cross-petition.

Appellant and appellee village have virtually agreed upon the following statement of law: A demurrer to a pleading admits only such facts as are well pleaded. This rule, however, does not include conclusions. One allegation of the petition of appellee village is to the effect that no proceeding at law has been had for the recovery of the debt, etc. The amended answer of appellant denies this allegation. In the case of *Dimick v. Grand Island Banking Co.*, 37 Neb. 394, 55 N. W. 1066, this court held: "The provision of the Code, that the plaintiff shall state in his petition whether any proceedings had been had at law for the recovery of the debt, or any part thereof, applies alone to formal mortgages, and not to mortgages or liens arising out of the equities between the parties." The instant case involves the foreclosure of a tax sale certificate and not a formal mortgage, so the decision last above cited makes a further determination of this question unnecessary.

The question to be determined in this appeal is the right of appellant, as mortgagee, to redeem from tax sale the real estate covered by its mortgage, including special assessments, and the duty of the taxing authorities to apportion the taxes so that one with the right to redeem a part of it may redeem such part from the tax sale wherein special assessments are involved, and this appeal involves

only the right to have apportioned and set aside by the proper taxing authorities of said village the special assessments against said lots 23 and 24, as hereinbefore set out, so that appellant may redeem the property upon which it holds its mortgage without being required to pay the special assessments against lots 21 and 22, in which appellant has no right, title or interest.

In support of the contentions raised by it appellant cites section 3, art. VIII, Constitution of Nebraska: "The right of redemption from all sales of real estate for the nonpayment of taxes or special assessments of any character whatever, shall exist in favor of owners and persons interested in such real estate, for a period of not less than two years from such sales thereof. Provided, that occupants shall, in all cases, be served with personal notice before the time of redemption expires."

Appellant further cites section 77-2021, Comp. St. 1929, in part, as follows: "Any person claiming an undivided part of any land sold for taxes may redeem the same on paying such proportion of the purchase money, interest and costs and subsequent taxes as he shall claim of the land sold. The owner or occupant of a divided part of any land sold for taxes, or any person having a lien thereon or interest therein, may redeem the same by paying the taxes separately assessed against such divided part, together with interest, costs and subsequent taxes."

It is true that the constitutional provision cited above does give the right to redeem from sales of real estate for taxes, general and special, of any character whatever, but this section clearly indicates that payment made to redeem to the county treasurer by the owner acts only in favor of the real estate and special assessments as shown by the county treasurer's books to be subject to redemption.

It is also true that under section 77-2021, Comp. St. 1929, *supra,* the owner or occupant of a divided part of any land sold for taxes, or any person having a lien thereon or interest therein, may redeem the same by paying the taxes separately assessed against such divided part, together with

interest, costs and subsequent taxes. This section refers to taxes assessed against the part or parcel of land. This section also sets forth the duty of the county assessor, upon demand of the owner or lienholder or upon demand of the county treasurer, to assess said divided part and to certify said assessment to the county treasurer, and thereupon said owner or lienholder of said divided part may redeem said divided part upon payment to the treasurer of such sum so assessed, together with interest thereon, costs and subsequent taxes.

The amounts of special assessments under the law of Nebraska are not determined by the assessed valuation of the real estate, and neither the county treasurer nor the county assessor has any interest, right or authority to apportion or assess special assessments such as paving taxes.

In the case of *Morse v. City of Omaha*, 67 Neb. 426, 93 N. W. 734, this court held: "The only foundation for special assessments rests in the special benefits conferred upon the property assessed, and, therefore, the frontage rule per foot cannot be adopted unless the benefits are equal and uniform."

In furtherance of its contention, appellant cites section 77-1903, Comp. St. 1929, which is, in part, as follows: "The treasurer shall receive taxes on part of any lot, piece or parcel of land charged with taxes, when a particular specification of the part is furnished. * * * The tax may be paid on an undivided share of real estate. In such case the treasurer shall designate on his record upon whose undivided share the tax has been paid. The treasurer shall receive from any taxpayer at any time, the amount due on account of special assessments of any kind." Analyzing this section, it gives the right of redemption to the proper parties to redeem in part as indicated, and the right of the county treasurer to accept 'the amount due on special assessments of any kind, but the section does not determine the right of reapportionment of a part or parcel of land whereon special assessments may be had. This section gives the right of redemption, of course, after the apportion-

ment or reapportionment, as the case may be, has been made by the proper taxing authorities. The county treasurer accepts the money, gives the proper credit for the payment of taxes, general and special, under this section, but he cannot himself make a division and can only accept that which is certified to him so that the taxes may be paid and redemption had, as provided for in this section.

Appellant further cites the case of *State v. Thomas,* 127 Neb. 891, 257 N. W. 265, wherein this court held: "Taxing statutes as to special assessments are strictly construed in favor of the taxpayer." In the last-cited case this court, in interpreting the section of the statutes providing for the levy of special assessments for paving by cities of the second class and villages and the payment thereof by the property owner, held that such section confers on the owner the option of paying in instalments, but does not prevent the owner from paying balance of assessment at any time by paying the amount thereof and interest to date. The sections of the statute cited by appellant and the rights of the taxpayer thereunder to pay special assessment were passed on in this case.

Appellant cites section 17-432, Comp. St. 1929, in support of its contention, which, in part, is as follows: "The governing body of any city of the second class or village shall have the power to grade, * * * pave, repave, * * * at public cost, or by levy of special assessments on the property specially benefited thereby, proportionate to benefits." This section of the statute designates the powers granted to any city of the second class or village and specifies what the governing body of such city or village shall have the power to do, that is, to grade, pave and repave and levy special assessments against the property specially benefited, proportionate to the benefits. This the governing body of the village of Winside did without objection as to its method and procedure.

Appellant further cites section 17-435, Comp. St. 1929, which is, in part, as follows: "First. Such assessment shall be made by the council or board of trustees at a

special meeting, by a resolution fixing the valuation of such lot assessed, taking into account the benefits derived or injuries sustained in consequence of such contemplated improvements." As stated therein, this section designates the manner in which the assessments shall be made by the council or board of trustees, by taking into account the benefits derived or the injuries sustained in consequence of such improvements. This provision of the statute was obviously followed by the taxing body of the village of Winside. There is nothing in this section authorizing the reapportionment or reassessment of special assessments by the governing body of a city of the second class or village and no restriction of any kind restricting said governing body from assessing the special assessments against the four lots *en masse. Morse v. City of Omaha, supra.*

The action of the governing authorities of appellee village in assessing the special assessments as provided for by law would seem to be conclusive, unless the members of such body making the assessments proceeded upon an illegal principle or an erroneous rule of law.

Nowhere in appellant's brief do we find any citations of authorities whereby a court of equity, under its general powers, could be of assistance to appellant and grant the relief it prays for, and to grant the relief contended for by appellant would be tantamount to legislating in favor of appellant. Under the amended answer, as it now stands, and for the reasons stated in this opinion, the ruling of the lower court sustaining the demurrer to appellant's amended answer and cross-petition is

AFFIRMED.

PAINE, J., dissents.